UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SECURITIES AND EXCHANGE COMMISSION
100 F Street, N.E.
Washington, DC 20549,

              Plaintiff,

v.

CHARAN R. BEHL and
HARISH K. PIMPLASKAR,

              Defendants.

C.A. No. _____-_____

## COMPLAINT

Plaintiff Securities and Exchange Commission (the "Commission") alleges that:

### NATURE OF THE ACTION

1. On May 28, 2004, Harish K. Pimplaskar, a then-employee of Pozen Inc. ("Pozen"), engaged in unlawful insider trading in the securities of Pozen, and unlawfully tipped his friend and business colleague, Charan R. Behl ("Behl"), who engaged in unlawful insider trading in Pozen securities. More particularly, in breach of his fiduciary duties to Pozen shareholders, Pimplaskar sold his existing holdings of 400 Pozen shares on the basis of material, nonpublic information that the U.S. Food and Drug Administration ("FDA") had not approved Pozen's New Drug Application ("NDA") for an experimental drug designed to treat migraine headaches, and tipped Behl, who could reasonably have been expected to use this information. Behl sold his existing holdings of 10,000 Pozen shares and sold short an additional 16,093 Pozen shares on the basis of this material, non-public information which he knew, or should have known, had been conveyed to him in breach of Pimplaskar's fiduciary duty to Pozen

shareholders.

2. The first public announcement of the FDA action came on June 1, 2004, when Pozen issued a press announcement at approximately 7:15 a.m. announcing the FDA non-approval. Pozen's per share stock price fell 37%, to $6.23, by the close of trading that day.

3. By trading on May 28, 2004, on the basis of material, nonpublic information, Pimplaskar and Behl avoided losses of $1,392.00 and $35,088.08, respectively, and Behl realized illicit profits of $56,753.66.

4. By engaging in such conduct, defendants violated Section 17(a) of the Securities Act of 1933 [15 U.S.C. § 77q(a)] ("Securities Act") and Section 10(b) of the Securities Exchange Act of 1934 [15 U.S.C. § 78j(b)] ("Exchange Act") and Exchange Act Rule 10b-5 thereunder [17 C.F.R. § 10b-5].

5. Unless restrained and enjoined by this Court, defendants will continue to engage in transactions, acts and practices that violate these provisions of the federal securities laws. The Commission seeks permanent injunctions against future violations and other relief requested in this Complaint.

## JURISDICTION

6. This Court has jurisdiction over this action pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)] and Section 27 of the Exchange Act [15 U.S.C. § 78aa].

7. In connection with the transactions, acts and practices described in this Complaint, the defendants, directly or indirectly, used the means or instrumentalities of interstate commerce, the mails, or the facilities of a national securities exchange.

## DEFENDANTS

8. Harish K. Pimplaskar, age 36, joined Pozen as an associate director of

pharmaceutical development in November 2003, where he worked until April 2005, when he was terminated by Pozen for violating its insider trading policy in connection with the trades at issue here. During that period, he resided in Chapel Hill, North Carolina. He currently resides in Chanhassen, Minnesota.

9.     Charan R. Behl, age 55, was an executive vice president of research and development at a publicly-traded pharmaceutical company from 1995 through January 2001. In that capacity, he was the company's chief point of contact with the FDA for purposes of processing NDAs and other drug applications. Since January 2001, he has worked as a consultant to pharmaceutical companies in the areas of pharmaceutical research and new drug development. He resides in Hauppage, New York.

## THE ISSUER

10.    Pozen Inc. is a Delaware corporation headquartered in Chapel Hill, North Carolina, and is a pharmaceutical company engaged in the development of migraine medications. In 2000, Pozen registered its securities with the Commission pursuant to Section 12(g) of the Exchange Act. Shares of Pozen trade on the Nasdaq National Market.

## FACTS

### A.     The FDA Does Not Approve Pozen's NDA for the Migraine Drug MT 100

11.    In July 2003, Pozen submitted an NDA to the FDA for approval of an experimental drug called MT 100.

12.    In filings with the Commission in February and May 2004, Pozen announced that it expected the FDA to complete its review of MT 100 by May 31, 2004, in conformity with requirements of the Prescription Drug User Fee Act. Since May 31, 2004 fell on Memorial Day, Pozen executives and employees, including Pimplaskar, expected the FDA to inform the

company of its decision on Friday, May 28, 2004.

13. On Friday, May 28, 2004, at 2:06 p.m., the FDA notified Pozen, through a "not-approvable letter" sent via email to a senior executive, that it had not approved Pozen's NDA for MT 100. The executive immediately informed Pozen's CEO of the decision. Members of the company's board of directors and executive committee were apprised of the non-approval at approximately 2:50 p.m. All other company personnel were apprised at an all-staff meeting held at approximately 4:00 p.m. on May 28.

14. The first public disclosure of the FDA's action occurred at approximately 7:15 a.m. on June 1, 2004, when Pozen issued a press release announcing the FDA's non-approval of the NDA for MT 100.

15. The per share price of Pozen's stock closed at $9.92 on Friday, May 28, 2004. After the issuance of the press release on June 1, Pozen's per share price declined 37% to $6.23 by the close of trading that day on a volume of 8.5 million shares—approximately 29 times the historical average daily volume.

### B. Pimplaskar Sells Pozen Shares On the Basis of Material, Nonpublic Information

16. From the time he joined Pozen in November 2003, Pimplaskar was aware that Pozen expected to be notified on May 28, 2004 of the FDA's decision on whether to approve the NDA for MT 100.

17. Expecting that a favorable decision by the FDA on the NDA would boost the per share price of Pozen's stock, Pimplaskar purchased Pozen stock in blocks of 100 shares on January 22, April 28, May 7 and May 10, 2004, for a total of 400 shares.

18. On joining Pozen in November 2003, Pimplaskar had signed a certification that he had read, understood and agreed to comply with the terms of the company's written policy on

trading in Pozen securities. Yet, in violation of this policy, Pimplaskar never sought management's pre-approval of any of his four purchases of Pozen securities. Moreover, two of the purchases were made during "blackout" periods, when company policy prohibited company insiders from trading in Pozen securities.

19. On learning on May 28, 2004 that the FDA had not approved the NDA for MT 100, Pimplaskar immediately accessed his brokerage account from his workplace computer and sold all 400 of his Pozen shares at 3:21 p.m. at a per share price of $9.71.

20. Pimplaskar made no attempt to verify that news of the FDA's decision had been made public prior to his trading. Indeed, he sold his shares "to cut [his] loss[es]" in the expectation that the news would "decrease the stock price for sure."

21. Pimplaskar knew, or was reckless in not knowing, that he sold his Pozen shares based on material, nonpublic information and in breach of the fiduciary duty he owed to Pozen's shareholders.

C. **Pimplaskar Tips Behl**

22. Pimplaskar and Behl first met in 1995 while working at a pharmaceutical company. Behl, who was an officer of the company and is approximately 20 years older than Pimplaskar, took an interest in Pimplaskar's professional development and became Pimplaskar's mentor. Since 1996, the two men have continued to work closely together as members of a focus group of an association of pharmaceutical scientists. In addition to mutual professional interests, Behl and Pimplaskar are personal friends and acquainted with each other's families.

23. Behl has been an active securities trader for several years, a fact which was known to Pimplaskar prior to May 2004. The two men periodically discussed their respective securities trades, and Pimplaskar knew that Behl traded in securities of pharmaceutical

companies.

24. Behl first purchased Pozen shares in May 2004, acquiring 12,250 shares between May 6 and May 26 in the expectation that a favorable decision by the FDA on the NDA for MT 100 would boost the per share price of Pozen's stock. (Behl sold 2,250 shares prior to May 28, 2004.)

25. At 3:27 p.m. on Friday, May 28, 2004, within minutes after selling his 400 Pozen shares, Pimplaskar called Behl at Behl's cell phone number. The call lasted six seconds due to poor reception. Pimplaskar redialed Behl's cell phone number. The second call lasted 42 seconds. Behl then placed a call from his cell phone to Pimplaskar at 3:28 p.m. that lasted for three minutes. During these calls, Pimplaskar told Behl that the FDA had not approved the NDA for MT 100.

26. While still on the phone with Pimplaskar, Behl accessed his brokerage account from his computer and began selling his holdings of Pozen shares and short selling Pozen shares. Between 3:30 p.m. and 4:34 p.m. on May 28, 2004, Behl sold 10,000 Pozen shares at between $9.70 and $9.79 a share, and sold short an additional 16,093 Pozen shares at between $9.65 and $9.90 a share.

27. Over the sixty-minutes that Behl traded, the per share price of Pozen stock rose from $9.70 to $9.90. Behl was aware that the per share price showed no sign that the market had yet learned of the FDA's action, later explaining that "that's the time to get out [of the market], before everybody else sees [the news]." Indeed, Behl made no attempt to verify that the news had been made public regarding the FDA's decision before he sold and sold short Pozen shares.

28. Pimplaskar knew, or was reckless in not knowing, that by notifying Behl of the FDA's non-approval of MT 100, he was conveying material and nonpublic information in breach

of his fiduciary duty to Pozen's shareholders, and that Behl could reasonably have been expected to use this information. In conveying this information to a personal friend and business colleague, Pimplaskar derived a personal benefit.

29.    Behl knew, or should have known, that Pimplaslar had conveyed to him material and non-public information in breach of Pimplaskar's fiduciary duty to Pozen's shareholders.

30.    By selling his 400 Pozen shares on May 28, 2004, Pimplaskar avoided losses of $1,392.00. By selling 10,000 Pozen shares on May 28, 2004, Behl avoided losses of $35,088.08; additionally, by selling short 16,093 Pozen shares on May 28, 2004, Behl realized illicit profits of $56,753.66.

## FIRST CLAIM

### (Securities Act Section 17(a) [15 U.S.C. § 77q(a)])

31.    The Commission realleges and incorporates by reference the allegations contained in Paragraphs 1 through 30 above.

32.    By engaging in the foregoing conduct, Pimplaskar and Behl violated Securities Act Section 17(a) [15 U.S.C. § 77q(a)].

## SECOND CLAIM

### (Exchange Act Section 10(b) [15 U.S.C. § 78j(b)] and Exchange Act Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5])

33.    The Commission realleges and incorporates by reference the allegations contained in Paragraphs 1 through 30 above.

34.    By engaging in the foregoing conduct, Pimplaskar and Behl violated Exchange Act Section 10(b) [15 U.S.C. § 78j(b)] and Exchange Act Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## RELIEF REQUESTED

WHEREFORE, the Commission respectfully requests that this Court enter judgments against Pimplaskar and Behl that:

1. enjoin Pimplaskar and Behl from violating Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)] and Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Exchange Act Rule 10b-5 thereunder [17 C.F.R. § 10b-5];

2. orders Pimplaskar and Behl to disgorge all avoided losses and illicit gains, with prejudgment interest;

3. orders Pimplaskar and Behl to pay appropriate civil penalties under Section 21A of the Exchange Act [15 U.S.C. § 78u-1(a)]; and

4. grants such other and further relief as this Court may deem just and proper.

Dated: July 25th, 2006

Respectfully submitted,

Donald N. Dowie
Scott W. Friestad
Robert B. Kaplan
Nina B. Finston, D.C. Bar No. 431825
Ryan Farney, D.C. Bar No. 480888

Attorneys for Plaintiff
Securities and Exchange Commission
100 F. Street, N.E.
Washington, DC 20549-5561
(202) 551-4471 (Dowie)
(202) 772-9245 (fax)